IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1.) GEOFFREY PAUL ARCE, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. CIV-23-722-JD |
| ) | |
| (1.) STATE OF OKLAHOMA ex rel. ) | |
| DEPARTMENT OF WILDLIFE, ) | **JURY TRIAL DEMANDED** |
| (2.) ZACHARY PAULK, Individually, ) | |
| and in his Official Capacity, ) | Attorney Lien Claimed |
| (3.) STATE OF OKLAHOMA ex rel. ) | |
| DEPARTMENT OF PUBLIC SAFETY, ) | |
| (4) DENNIS DICKENS, Individually, and ) | |
| in his Official Capacity, ) | |
| ) | |
| **Defendants.** ) | |

## VERIFIED COMPLAINT

The Plaintiff, by and through CONRADY LAW, PLLC by the undersigned attorney, James A. Conrady, and for his causes of action against Defendants alleges and states as follow:

### INTRODUCTION

1.      Plaintiff under Federal Question Jurisdiction seeks compensatory damages for the deprivation of civil rights, and for the failure to properly train and supervise. Under Supplemental Jurisdiction, Plaintiff under all Common Law and Oklahoma State Laws, seeks compensatory damages for unlawful detention without probable cause, false arrest, use of excessive force causing injury to his person and emotional distress.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the U.S. Constitution, under 28 U.S.C. § 1331, and Rule 65 (Injunctions and Restraining Orders) of the Federal Rules of Civil Procedures. This Court has Supplemental Jurisdiction over the Common Law Claims as well as applicable State Law Claims, specifically under the Oklahoma Governmental Tort Claims Act (OGTCA), all pursuant to 28 U.S.C. § 1367 in that all of the claims in the action within such original jurisdiction, form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is appropriate in this Court as the Plaintiff lives in Norman, Cleveland County, Oklahoma, which is located in the Western District of Oklahoma, and the actions that are at issue in this lawsuit took place in the Western District of Oklahoma.

## PARTIES

4. Plaintiff is a resident of Norman, Cleveland County, Oklahoma.

5. Defendant Oklahoma Department of Wildlife which is a political subdivision of the Oklahoma.

6. Defendant Zachary Paulk, Ranger with the Oklahoma Department of Wildlife.

7. The Oklahoma Department of Public Safety which is a political subdivision of the Oklahoma.

8. Trooper Dennis Dickins, Maritime Division of the Department of Public Safety.

## FACTUAL ALLEGATIONS

**Plaintiff's Narrative Description of Events:**

9. The incident subject of this suit occurred in Cleveland County, State of Oklahoma.

10. That Oklahoma Office of Management and Enterprise Services was Notified of Claim pursuant to 51 O.S. §157, on September 15, 2021 and the claim was deemed rejected on October 8, 2021 and the Cleveland County District Court case was Petition is properly filed within 180 days from the time of rejection and/or prior to April 6, 2022.

11. Ultimately the Cleveland County case was dismissed without prejudice to refiling.. This action is filed within 365 days of the dismissal.

12. That jurisdiction and venue is proper over the person and subject matter of this suit.

13. That Defendant Zachary Paulk is an employee od the Department of Wildlife.

14. On June 19th 2021 at approximately 8:00 PM Plaintiff and his family were loading up three Jet Skis at Hog Creek Boat Ramp, after a full day at Lake Thunderbird.

15. Two of the Jet Skis had been used for recreation throughout the day and had already been loaded onto trailer. The third had been brought to test in the water and had to be manually pushed from shore nearby (after a short test it had been left on shore for the remainder of the day).

16. As Plaintiff Geoffrey Arce was walking the third Jet Ski from the nearby shore to the boat ramp, he was approached by Defendant Zachary Paulk.

17. On June 19 2021 the Defendant Zachary Paulk was acting outside of his primary duties defined by State Statute Title 29.

18. After being questioned about lack of registration stickers on third Jet Ski, Plaintiff stated he was in compliance with state statute due to the nature and use of the water craft.

19. Defendant Paulk did not deny the compliance with statute, but became very irritated to the point where he was now yelling, and demanded that the watercraft be loaded and parked by his truck so that he could have an inspection done on the vessel.

20. The seizure of plaintiff's property (Watercraft) was unlawful and in violation of §21-1738, and ultimately resulted in theft of the property from impound lot.

21. The Jet Ski was loaded and pulled to side of Defendants vehicle as instructed.

22. After the vehicle towing the vessel was parked next to Paulks' truck, Paulk continued to yell and scream at Plaintiff and other family, in a threatening demeanor, with clear use of imminent force. Paulk had no further instructions other than to wait as he had called in coast guard and other backup at this point, and they were in route. However, Paulk continued to yell at Plaintiff and his family about what they should and should not do, and what he could do, and other unwarranted threats and legal advice.

23. As Plaintiffs children were witnessing the scene, they became uneasy and

scared, and began to bawl hysterically, Plaintiff, Paulk, and Plaintiffs Cousins Wife Christina Park, where at the drivers side of the towing vehicle at this point and Paulk started yelling about how this was "You're Fault" after plaintiff pointed out the crying children.

24. After noticing his children plaintiff made an effort to walk away from Paulk to tend to the children and was immediately told to stop and stay where he was.

25. Upon being told to stop, Plaintiff asked Paulk if he was under arrest, and was told "No" by Paulk. Immediately after being told No, plaintiff began walking towards the children next to a van towing the two recreational watercraft that was parked approximately 30 feet away from the Jet Ski that was now in Paulks possession.

26. Paulk then approached Plaintiff from behind, and deployed OC spray to the back of plaintiffs head.

27. Paulk Stated "You're under arrest now" and after approximately 10 seconds of OC spray, tackled Plaintiff and placed him in hand cuffs.

28. The arrest of plaintiff did not meet any requirement set forth in §22-196, further, authority was not stated during the arrest in violation of §22-199, and was therefore unlawful.

29. The use of OC spray by defendant Zachary Paulk was excessive when it was deployed directly from behind while Plaintiff was walking away from Paulk at a normal pace.

30. After being cuffed Paulk dragged Plaintiff by arms to his vehicle where he

pinned plaintiff against front right fender of truck and started wiping OC spray from plaintiffs head, causing the chemical burn to extend to other parts of plaintiffs face. Plaintiff demanded he stopped and that he did not want medical care from Paulk, but Paulk refused and continued wiping as plaintiff struggled to move his head from the rag Paulk was using.

31. When other authorities arrived Plaintiff was pinned up against truck by Paulk.

32. Immediately upon other authorities arrival Plaintiff was taken into custody by OHP officers, and separated from Paulk.

33. All of Plaintiff's remaining interactions with other authorities used normal voice and involved no disturbances.

34. Norman Fire Department arrived on scene to treat OC Spray injuries, and denied Plaintiffs request to dip head in the lake to defuse the spray into the water.

35. Norman Fire Department allowed Plaintiff to be showered with their truck hose, which caused the OC spray to drip down Plantiffs entire body causing excruciating pain.

36. After receiving the shower and further chemical burns, Plaintiff was placed in NPD Squad car to be transported to Norman Regional Hospital for treatment of chemical burns.

37. Defendant Norman Fire Department was negligent in treatment of OC spray by spraying Plaintiffs head with water which caused full body chemical burns.

38. Paulk followed Plaintiff into room at Norman Reginal Hospital, and multiple times attempted to lecture Plaintiff on why this was Plaintiffs fault, after being told by other officers to cease contact with Plaintiff.

39. During Paulks booking process at Cleveland County Detention Center, jail staff witnessed and made comments to each other about Paulks profuse sweating and nervousness during his booking paperwork. The temperature in the building was comfortable to the average person.

40. Defendant Zachary Paulk caused irreparable trauma to Plaintiff's children who where present at the scene.

41. In Investigation and other arrest documentation, Defendant Paulk produced at least one false affidavit in violation of §22-1264 in which resulted in job loss and other negative financial impact from character defamation in excess of $10,000.

42. Defendants knew and/or should have known of Zachary Paulk's innability to conduct himself in a manner compliant with the above-mentioned state statutes and of his lack in training and competency in basic civil liberties. The negligent entrustment of Paulk's authority as a peace officer was made with reckless disregard to the people of this state of Oklahoma.

**Additional Allegations:**

43. 1st Contact with Dennis Dickens was spring of 2021, while I was leaving a Sailboat Pt. boat ramp at lake thunderbird, after testing two of my customers jetskis (at least one of which had an out of date tag).

44. I explained what I was doing and he warned me that he would impound the next watercraft I had at the lake without current registration, after I explained that it was something I was going to probably have to do again, his last words were "Ill be seeing you again."

45. After the first encounter I began to read up on all applicable OK state statutes, prior to bringing another watercraft with registration issues.

46. On June 19th 2021, The next vessel I brought to lake thunderbird (without displayed current registration) was a complete custom PWC that we had remanufactured in our shop and needed to do an initial water test, after reading through OK state statutes I believed this vessel testing to be legal under OK §710:22-1-3, as this watercraft was manufactured solely for watercraft racing under in the IJSBA "SC" Category.

47. At about 8pm that evening I was approached by Zachary Paulk, a Game Warden officer under OK DOWC, as I was waiting for my associate to back a trailer in to load the vessel. Paulk asked were the registration decals were and I respectfully informed him that it was my understanding that OK Statute permitted the testing I was completing that day. Paulk immediately became irate and began aggressively yelling at myself and associates. We complied with Paulks order to park the watercraft and was told by Paulk that he was going to have the "Coast Guard" come over and perform an inspection on the vessel. With vessel in Paulks possession I told him I was going to sit with my children who were hysterically crying because of Paulks behavior. On or about this time Paulk had began a cell phone conversation with Dennis Dickens. Paulk told me I wasn't going

anywhere (or something to that effect) I then asked if I was under arrest and he replied "No." After his reply I turned and began walking away to sit and wait with my family (approx. 50ft away), about 5-10 seconds later I felt a stream of fluid against the back of my head, to which I realized was pepper spray, I stopped, turned my head slightly but not all the way in paulks direction as he continued the spray and I didn't want it on my face. After a few more seconds of spray paulk tackled me to the ground and cuffed me, and drug me to his vehicle, shoved me against the front of the vehicle and began wiping the spray and spreading it onto my neck and side of my face, even while I made it very clear I did not want his medical assistance and resisted the wiping, he continued to shove me into the car and wipe my head. Ultimately the vessel was impounded and I was taken to hospital and then Cleveland County Detention Center where my wife posted bail later that night.

48.    All Charges were Dismissed under a plea deal, where I had to pay some fees, but I took because we were in the middle of adopting my son and all the criminal charges could have stopped the adoption; **TR-2021-2685 & CF-2021-874.**

49.    I went to the impound lot the following Monday, with a title for a vessel that some of the parts for the impounded vessel came from. The impound Lot (Quality Towing), had me wait as if they were going to get the vessel, but instead called Dickens and informed him of my presence. Dickens had NPD show up within a few minutes and place me in handcuffs and then into a patrol car, until Dickens showed up in his personal car, out of uniform. He had NPD place me in his personal vehicle and uncuff me so that

we could talk. He proceeded to give me unsolicited legal advice for about an hour, and tell me that the title I had would not work to get the PWC out of impound and that there was a vin plate in the vessel (a secondary hidden HIN plate of the original Hull we used to manufacture the watercraft) and I needed to prove ownership of that HIN. So I got a court ordered title for that HIN; **CV-2021-2035**, however the seller of the original hull discovered the situation and used an old title to get the watercraft out of impound (he had seen the work that was done to the vessel- I had paid him $200 for the hull and he was able to get the complete vessel and trailer from impound). I sued the original hull seller; **SC-2021-2324** and won a judgement of $8000 plus court cost that seller will not pay. And I am unable to collect on.

50. I then filled case **No. CJ-2022-204** against Paulk and other state agencies and officials, which was dismissed due to wording I used in petition about Paulk acting within Scope of his role.

51. A few encounters happened throughout 2022 with lake patrol as we were approached for operating a vessel with out of state registration, as well as helping another boater who was stuck on a sand barge.

52. 4-14-2023 I brought all of our shop associates out with me to test a few customer watercraft (some of which had registration issues), after testing we were all hanging out in parking lot of Hog Creek at lake thunderbird, the only others in parking lot were Dickens and Proctor in OHP patrol vehicle, and two game warden vehicles with multiple officers inside; all of whom watched us for almost an hour until everyone got

into their vehicles to leave, as we went to leave, myself in the company van hauling the vessels was immediately surrounded. We all got out and went to vessels on trailer. One of Dickens first question was how much have I had to drink. I had a military intern with me (he had ridden with me in van) and this was a very defaming question, Dickens continued to offer unsolicited legal advice, and eventually Proctor issued a field contact report and everyone left.

53. After this incident I called Service Oklahoma (Formerly Oklahoma Tax Commission), and got every applicable permit and license I could possibly need, including a New/Used Boat Dealer License, and even a special test permit for boat manufacturers that is only available by request.

54. I also spoke with Dickens Lieutenant about the situation and expressed that I felt a restraining order was going to be necessary. I was told it would be looked into. I have some of the event on cell phone video and have requested but not received body cam footage.

55. 5-27-2023 My family and I took our boat out, and as I often do I brought 2 watercraft from the business along with me as well, as both had recently had major service work completed and needed to be tested; A Yamaha Waverunner and Honda Aquatrax, the waverunner an out of state vehicle that was recently purchased by the business for $100 and completely overhauled, and the Aquatrax a customers' watercraft that had been dropped off about a year ago and to my knowledge at that time was abandon at our shop. The Waverunner registered in Texas at that time and Aquatrax had

current Oklahoma registration. Under OK §710:22-1-3 Boats or motors owned by visiting nonresidents which are currently registered in another state and remain in Oklahoma sixty calendar days or less. Since the title was still in a Texas Residents name I believed this to warrant a registration exemption (besides the fact that our business was a licensed boat dealer, and manufacturer at the time, and although my daughter may have been enjoying herself while doing it, she and her friends were under the understanding that these watercraft may have issues as they were brought out to be field tested).

As my daughter and her friends on were bringing the watercraft to the boat ramp they were stopped by Dickens, the following is my daughters recollection of the events that took place during Dickens stop;

56.  Braylee (Daughter) and Friends Riding both PWCs (Personal Watercraft) back to boat ramp at end of day, just before there would be not enough daylight to operate the PWCs. Braylee and one friend operating Aquatrax, and Friend Named Jay operating the Waverunner.

57.  Jay pulled over by Dickens, and then Dickens instructed Braylee to Join Dickens and Jay at Dickens Vessel.

3. While Tying both PWCs to his vessel, Dickens asks who the owner of the PWCs is. Braylee responds; My Dad

        a.   Dickens responds; Who is your dad?

        b.   Braylee responds; Geoffrey Arce

        c.   Dickens Responds (While changing his tone of voice and facial

    expression) Geoffrey Arce?

 d. Braylee responds; Yea.

 e. Dickens then instructs Braylee and Friends to board a different OHP vessel and leaves the scene with both PWCs.

 f. Officer on new OHP vessel takes identification information from girls and tells them that they could be fined for lots of things including registration and missing fire extinguisher, at about this time, myself and rest of family arrive at second OHP vessel (after discovering girsl were not aboard vessel towing PWCs), and are instructed to meet at dock to retrieve my daughter and friends.

58. After arriving at dock and getting daughter and friends back, I begin communicating with Officer Proctor, asking why the PWCs are being towed (most of which I have on cell phone video), Proctor is unable to give any reason and says it is a Dennis thing.

59. After doing an inspection on my boat and finding nothing wrong, Proctor Issues a single citation for failure to display light on vessel at night, as by the time we had stopped at both OHP vessels to find my daughter the sun had set, and although we had our nav lights in the front on, we did not put our tail light up because we were already within 100~ yards of dock and were distracted by the situation at hand. No other citations were issued.

60. The following Monday I contacted Dickens Lieutenant a second time and

was told Dickens had done nothing wrong. I then Contact his Captain, Capt. Tucker, who had already been briefed of the situation and told me it would be looked into. I contacted the wrecker service (Quality Towing) and was told that there was a hold on the PWCs by Dickens and I had to go through him to get them released.

I filed a Protective Order (**No. PO-2023-356**) on 5/30/2023 as I did not feel safe going to Quality Towing since I was kidnapped the last time during a similar situation. I spoke with Judge Hales and was informed that he could not grant the order without an investigation report of another governmental body, I explained to Hales that I had already tried to report this multiple times through Cleveland county and the city of Norman but all had refused due to the jurisdiction of the lake falling under OHP. Hales advised me that I could get either the Cleveland county district attorney or Oklahoma State Bureau of Investigations to complete an investigation.

61. Both refused, and the D.A. of Cleveland County advised I report to the Attorney General office.

62. On 5/31/2023 I filed a Citizen Complaint form urgently requesting an investigation. A few days later I received a letter from the Attorney Generals Office that, without taking any stance on the matter, advised me to hire an attorney.

63. In the meantime, OHP Capt. Tucker informed me they were doing their own internal investigation, and that a different hold was now placed on the watercraft that did not allow me to retrieve them while they completed their investigation. He also advised me the investigation would likely result in some citations being issued.

On or about 6/09/2023 Capt. Tucker informed me that they had completed their investigation and no citations were being issued, and that they spoke with the impound lot and the owner agreed to waive all of the fees on the Aquatrax as there was no reason to impound it, but they would not waive anything on the Waverunner as it was not properly registered.

64. I was also told I would still need to have both PWCs registered to me to retrieve them from impound.

65. So I transferred waverunner title into our business and filed for a court ordered title at Cleveland county courthouse.

66. I also got ahold of the Aquatrax customer as I was told by Capt. Tucker that Dickens had been communicating to them that I was renting out their Aquatrax. The customer informed me that they did want their PWC back so I told them that including the service they authorized me to do on the watercraft and the storage fees they had accumulated (after being notified that storage fees would be applied if the PWC was not picked up) amounted to about $17,000.

67. Before the PWC was abandon at the shop I had informed the customer that more work was going to be required in addition to the $2600~ that was already owed, I believe that after discovering the PWC was able to be ridden on the lake, they found a way to get the watercraft back without paying for repair.
This is now a separate civil matter that I will have to deal with customer on in a separate case.

68. On June 17th I went to pickup at least the Waverunner from Quality Towing, an associate named Levi was at the counter and immediately became angry with me after discovering I was the owner of the PWCs, I showed him the current title and he refused to release the PWC to me because I did not have a sticker with it (because boat dealers don't require stickers). I was unable to even ask about Aquatrax because he charged at me to physically kick me out before I could ask. I have the second half of this on cell phone video as I began recording when I was told a current title is not enough to retrieve the PWC from impound. As of 6/20/2023 the Waverunner is still in impound at Quality Towing collecting fees.

## FIRST CAUSE OF ACTION FOR
## DEPRIVATION OF CIVIL RIGHTS, AND CLAIMS FOR
## COMPENSATORY DAMAGES
*[42 U.S.C. § 1983 and The Fourth and Fourteenth Amendment]*

69. The Plaintiff has a Constitutionally protected Right to Equal Protection under the Law.

70. At all timess the individual defendants were acting under the **"Color of Law"**.

71. The Plaintiff has suffered a denial of his civil rights due to the events described above in paragraphs numbered............. The Plaintiff's civil rights were infringed upon and denied due to:

    a.    Lack of probable cause.

    b.    Unlawful Detention.

    c.    False Arrest without legal authority.

    d.    Use of Excessive Force.

    e.    Injury to his person.

**COMPENSATORY DAMAGES:**

72. Plaintiff suffered compensatory damages including, but not limited to, injury to his person, economic damages, emotional damages, humiliation, loss of respect in the community and and mental distress.

73. Plaintiff is entitled to recover $125,000 in statutory damages under the Oklahoma Governmental Tort Claims Act.

## SECOND CAUSE OF ACTION
## FAILURE TO TRAIN AND SUPERVISE
*[42 U.S.C. § 1983, Declaratory Judgment & Injunctive Relief]*

74. The Plaintiff seeks Declaratory Judgment finding that the Department of Wildlife and the Department of Public Safety do not have in place adequate training and supervision of officers under their command.

75. Plaintiff seeks a proactive Injunction requiring the Wildlife Department and the Department of Public Safety to:

    a.    Review and revise training subjects and training methods.

    b.    Revise training methods of de-escalation.

## COMPLIANCE WITH THE
## OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT
*[Title 51 Oklahoma Statutes § 151 et seq.]*

76.

## REQUEST FOR RELIEF

I. Enter Declaratory Judgment finding that:

    A.

II. Issue a proactive Injunction requiring Defendants, Department of Wildlife and Department of Public Safety to:

    A. Promulgate proper training procedures for all officers and to adequately supervise the conduct and actions of all Department of Wildlife and the Department of Public Safety, and

    B. To meet appropriate discipline when warranted.

III. Award statutory, actual and compensatory damages against all Defendants for discrimination against the Plaintiff and for violations and depravation of the Plaintiffs Civil Rights, injuries and emotional distress.

IV. Award reasonable attorney's fee and costs; and

V. Award such other relief as the Court deems just and proper.

VI. Plaintiff requests a jury trial as to all issues.

Dated this 14th day of August, 2023.

                                                         Respectfully Submitted,

                                                         /s/ James A. Conrady
                                                        James A. Conrady, OBA # 1853
                                                        CONRADY LAW, PLLC
                                                        2203 South Western Road
                                                        Stillwater OK 74074
                                                        Phone: (832) 330-5620
                                                        Email: jconrady@hotmail.com
                                                        Attorney for the Plaintiff

## VERIFICATION

STATE OF OKLAHOMA,    )
                     )    ss:
COUNTY OF CLEVELAND, )

Geoffrey Paul Arse, of lawful age and being first duly sworn upon oath, states: I am Geoffrey Paul Arse, Plaintiff above named. I have read the foregoing **COMPLAINT** and affirmatively state that all statements contained therein are true and correct according to my best information and belief.

_____
Geoffrey Paul Arse, Plaintiff

Dated this __11__ day of August, 2023.

OFFICIAL SEAL
DEANNA LEMLEY
Commission # 19007269
Expires July 22, 2027

_____
NOTARY